# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **DONNA WICKER,** | : | **CASE NO. 1:15-cv-00237** |
| **PLAINTIFF,** | : | |
| **v.** | : | **JUDGE MICHAEL R. BARRETT** |
| **JEFFERY S. LAWLESS, ET AL.,** | : | **MAGISTRATE JUDGE KAREN L. LITKOVITZ** |
| **DEFENDANTS.** | : | |

## OPINION & ORDER

Plaintiff Donna Wicker asserts claims arising under 42 U.S.C. § 1983 against Defendant Jeffery S. Lawless (Lawrence County Sheriff), Defendant Michael Mosley, Defendant Courtney James, and Defendant John Doe. Plaintiff alleges that, during her confinement at the Lawrence County Jail, Defendants Mosley, James, and Doe violated her Constitutional right to be free from excessive force. (Doc. 4, PAGEID# 30, ¶74). She further claims that all Defendants are liable for their alleged failure to provide adequate medical care (*id*. at 30, ¶77), and that Sheriff Lawless is liable for his purported failure to "adequately train and/or supervise Defendants Mosley and James with regard to timely providing and administering medications to inmates with known serious medical conditions." (*Id*. at 31, ¶80). Plaintiff is suing all Defendants in their respective individual and official capacities. (*Id*. at 21-22, ¶¶4-7).

This matter is before the Court on: (1) Plaintiff's Motion for Sanctions against Defendants and Defendants' Counsel for Discovery Misconduct under Rule 37 ("Motion for

Sanctions") (Doc. 27); (2) Defendants' Motion for Summary Judgment (Doc. 29); and (3) Plaintiff's Motion to Strike Exhibit A to Defendants' Reply Memorandum to Plaintiff's Memorandum Contra Defendants' Motion for Summary Judgment ("Motion to Strike") (Doc. 42). Defendants' Motion for Summary Judgment and Plaintiff's Motion for Sanctions have been fully briefed. Despite an opportunity to do so, Defendants never filed an opposition to the Motion to Strike. Accordingly, the foregoing Motions are ripe for disposition.

## I.   FACTUAL BACKGROUND

The Parties do not dispute that, on April 10, 2013, Plaintiff pleaded guilty to a criminal charge of theft and was sentenced to serve four years in prison, with release in six (6) months with good behavior, by the Lawrence County Court of Common Pleas.

The Parties also appear to agree that Plaintiff is a 55-year old, Type 2 Diabetic who, at all relevant times, required a daily regimen of medications. Plaintiff also suffers from hypertension and must take the medication Cozor on a daily basis to control and manage her blood pressure; Zorcor to manage and control her cholesterol; and Hydrocotorthoricide, a water pill. (Doc. 29; PAGEID# 273). Defendants do not appear to dispute that Plaintiff was required to take her medication each day before breakfast and after dinner. (*Id.*).

On April 10, 2013, Plaintiff anticipated receiving a prison sentence, and as a result, packaged and prepared her medications prior to her incarceration so that she would have them in jail; however, Defendants dispute whether the jail ever received her medications. (*Id.* at 281).

### A.  Plaintiff's Version

During Plaintiff's booking process, she allegedly told an LCSO booking officer of her medical conditions, indicating that she needed to take her medications that night. (Doc. 37-1; PAGEID# 703, 704). Plaintiff claims that, on April 10, 2013, her daughter had provided jail

administrators with Plaintiff's current medications, in their original bottles, with the bottles in clear plastic bags. (*Id*. at 711). On the evening of April 10, 2013, the Plaintiff requested her medication. (*Id*. at 704). According to Plaintiff, a Lawrence County Correctional Officer stated to Plaintiff that her medications were not at the jail. (*Id*.).

On the morning of April 11, 2013, prior to eating breakfast, Plaintiff again requested her medications that her daughter provided to jail administrators on the previous day. (*Id*. at 705). Plaintiff also allegedly requested her medication on the evening of April 11, 2013, prior to eating dinner. (*Id*.). Plaintiff contends that she also requested her medication on the morning of April 12, 2013, prior to eating breakfast. (*Id*.). However, every time the Plaintiff requested her medications, she was told by Corrections Officers that they had no medications to dispense to her. (*Id*.). Plaintiff claims she made calls home to members of her family, who became upset about the situation regarding her medication, and in turn made calls to the Lawrence County Jail. (*Id*.). However, Plaintiff never identifies any specific named Defendant with whom she discussed her medical condition or to whom her family members conversed. (Doc. 37-1; PAGEID# 703-705) (*see, e.g.*, ¶22, "the male correction's officer was the first Lawrence County Jail employee I spoke with"; ¶24, "I told this officer I had to check my blood glucose at least four times each day"; ¶37 "the jailer said he would check" on her medications, etc.).

On the evening of April 12, 2013, Plaintiff alleges that Defendant Mosley presented her with a small paper cup with pills in it. (*Id*. at 706). Plaintiff claims that she did recognize the size, shape, and color of the pills. (*Id*.). Plaintiff claims that, when she told Defendant Mosley of the error, he intimidated her into taking the medication by yelling "take those fucking meds!" and "take those fucking meds now!" (*Id*.) Plaintiff claims that, within two hours of ingesting the

medication, Plaintiff became nauseous, dizzy, and lightheaded. (*Id*. at 707). The Parties dispute the severity of her injuries, including her post-ingestion glucose and blood pressure levels.

After Plaintiff alerted Defendant James that she was feeling ill, Defendant James brought Plaintiff to sit on a bench in the booking room. (*Id*.). Plaintiff claims that Defendant James shoved her at times while walking down the hall, and because she was ill she would lose her balance and "bump" her head "between the wall and the bars." (*Id*.). At that time, Defendant James told Plaintiff to test her sugar. (*Id*.). Plaintiff claims that before she could test her sugar, she lost consciousness and fell from the bench to the floor. (*Id*.). Plaintiff allegedly awoke to Defendant James kneading her chest with her knuckles, in an attempt to awaken Plaintiff. (*Id*.). Plaintiff, after awaking, self-administered a glucose test and claims that she lost consciousness again, but before she lost consciousness, she heard Defendant James' voice saying "it's near 400," referring to the Plaintiff's glucose level. (*Id*.). What happened next is unclear, because Plaintiff herself provides three different accounts. First, the First Amended Complaint alleges that the Plaintiff regained consciousness for the second time, awaking on a mat on the floor, and Defendant Mosley, Defendant James, and Defendant John Doe were all kicking her in her left ribs, left thigh, and left shoulder. (First Amended Complaint, ¶ 50). Second, Plaintiff's deposition testimony states that Defendant Mosley was not involved in the kicking. (Doc. 30-3; PAGEID# 449). Third, her later declaration alleges no kicking on the part of Defendant James. (Doc. 37-1; PAGEID# 707) ("I passed out for a second time. I awoke this time to Defendant James kneading my chest and two other jail employees kicking me in the upper left shoulder and side.").

Plaintiff recalls EMTs arriving, and EMTs kicking her as well. (*Id*. at 707). Plaintiff was taken to St. Mary's Hospital in Ironton, Ohio. (*Id*. at 708).

**B. Defendants' Version**

Defendants' claim that there is no evidence, beyond the "self-serving" declaration of Plaintiff's daughter, that Plaintiff's medications ever arrived at the jail. (Doc. 29; PAGEID# 281). Defendant Mosley denies dispensing any medication to Plaintiff, let alone forcing her to take pills. (Doc. 30-2; PAGEID# 410, 417). He suggests that he could not have been the one to dispense the medication, because Plaintiff recalls taking the pills at 5 p.m., jail records reflect that medicine was passed at 7:40 p.m., and he worked the midnight shift from 8:00 pm. to 6:00 a.m. (*Id*.). He thus claims he was not even on duty when medicine was passed; however, Plaintiff argues that Defendant Mosley did not log his own time, asking others to record log entries on his behalf due to his poor handwriting, which creates a genuine dispute of material fact regarding his presence at the jail. (*Id*. at 382).

Both Defendants Mosley and James deny kicking or shoving Plaintiff. They further argue that none of the medical records suggest that Plaintiff was kicked. (Doc. 29; PAGEID# 287). Furthermore, Defendants deny that Plaintiff suffered any "sufficiently serious" injury due to being allegedly deprived of her medication, or dispensed the wrong medication. (Doc. 40). For example, according to the jail's records, Plaintiff's blood sugar level when the EMS arrived at the jail was 190—not the 400 Plaintiff claims. (*Id*. at 740).

**II.    PROCEDURAL BACKGROUND**

A succinct recitation of the procedural background of this case has been complicated by the resurrection of various discovery-related issues. Although the Court extended the discovery deadline multiple times, and was advised on September 1, 2016 that the Parties had resolved outstanding disputes regarding the scope of discovery, Plaintiff argues that the discovery process has caused her prejudice. She asserts that this Court should thus disregard certain evidence

offered by Defendants, entangling her discovery-related arguments with dispositive motion briefing.

A. **Posture of Plaintiff's Motion for Sanctions**

For months, discovery progressed in this case without the need for Court intervention. *See, e.g.*, September 23, 2015 Minute Entry for Proceedings ("parties report discovery is progressing"); October 28, 2015 Minute Entry for Proceedings (same). However, the Court became involved in Spring 2016 as the March 31, 2016 discovery deadline approached. Defendants – without objection from Plaintiff – requested an extension on the discovery cutoff because depositions were delayed while awaiting Plaintiff's medical records. (Docs. 16). The Court granted the motion, and the amended calendar order set the new discovery deadline for May 30, 2016. (Doc. 17).

On April 14, 2016, Plaintiff filed a "Rule 30(b)(6), Duces Tecum Notice of Deposition" directed to the Lawrence County Sheriff's Office. (Doc. 18). The notice enumerated several deposition topics, and instructed the designee to "produce for copying and review any and all LCSO documents, investigations, reports, recommendations, communications or actions, written or oral, regarding Plaintiff Donna Wicker." (Doc. 18). Although the notice lacked a deposition date, it appears that the parties discussed that the deposition would take place on May 5, 2016. Counsel for Plaintiff traveled to Ironton, Ohio on May 5, 2016 to take the noticed deposition, but was alerted upon arrival that a Rule 30(b)(6) representative was not prepared to go forward with the deposition. (Doc. 27; PAGEID# 115). Defendants concede they did not alert counsel for Plaintiff in a timely manner of the need to reschedule the deposition, citing an oversight in monitoring the email of an employee on leave. (Doc. 28, PAGEID# 156). The deposition was rescheduled for June 13, 2016.

On May 13, 2016, the parties jointly moved to further extend the discovery deadline. (Doc. 21). The Court granted the joint motion, extending the discovery deadline until June 30, 2016 and the dispositive motion deadline until July 29, 2016. (Doc. 26). During the month of June 2016, Plaintiff noticed several depositions, and Defendants designated Dr. Steven Wunder as an expert witness. (Docs. 22-26). The Rule 30(b)(6) deposition originally scheduled for May 5, 2016 ultimately took place on June 13, 2016. (Doc. 30-4).

On July 1, 2016, Plaintiff filed the above-referenced Motion for Sanctions, claiming that Defendants had abused the discovery rules in violation of Fed. R. Civ. P. 37. Specifically, Plaintiff claimed various violations stemming from the above-referenced Rule 30(b)(6) deposition. Plaintiff argued that the Rule 30(b)(6) designee was ill-prepared, and that Defendants and their counsel should be sanctioned for their purported failure to: (1) designate an agency representative knowledgeable and competent to testify on all noticed deposition topics; (2) provide additional representatives in light of the designee's "lack of sufficient knowledge"; and (3) "produce all relevant and requested documents under Fed. R. Civ. P. 30(b)(6)." (Doc. 27). As a sanction, Plaintiff requests that the Court: (1) issue an order "designat[ing] specific facts proffered by Plaintiff as established"; (2) "prohibit Defendants from introducing designated matters in evidence"; and (3) "order Defendants and Defendants' Counsel to pay reasonable expenses, including attorney's fees[.]" (*Id*.).

In response to the filing of the Motion, the Court held status conferences on July 7 and July 22, 2016. On July 22, the Court instructed the parties to work "on outstanding discovery requests and report to the Court when discovery is concluded." July 22, 2016 Minute Entry. On September 14, 2016, the Court held another telephone status conference, but Plaintiff's attorney did not participate. *See* September 14, 2016 Minute Entry. During the September status

conference and in its minute entry, the Court instructed the parties to continue briefing

Defendants' Motion for Summary Judgment, which had been filed in July 2016 but was not yet

fully briefed because the Court granted Plaintiff several unopposed extensions to respond.

(Docs. 32, 34, 35).  In one of the motions for extension, Plaintiff reported that the parties had

resolved their outstanding discovery issues:  "[T]he Parties have now conferred and have agreed

that Plaintiff will forego additional discovery and will file a response to Defendants' July 29,

2016 summary judgment motion."  (Doc. 33, PAGEID# 614).

**B.  Posture of Defendants' Motion for Summary Judgment**

On July 29, 2016, Defendants moved for summary judgment on all claims.  (Doc. 29).

Plaintiff was granted three unopposed extensions to respond, and ultimately filed her opposition

brief on September 28, 2016.  (Doc. 37).

Despite being granted two months to respond to Defendants' motion, Plaintiff argued that

Defendants' purported "defiance" of court orders and abusive discovery tactics caused her

prejudice:

> Defendants filed their Motion for Summary Judgment (MSJ) on
> July 29, 2016 in direct defiance of this Court's July 25, 2016
> instruction to work with Plaintiff to resolve pending discovery
> disputes and report back to the Court once discovery was
> completed.  As a result Plaintiff was forced into the untenable
> position of either responding to Defendants' MSJ in a timely
> manner or attempting to continue discovery under a pending
> dispositive motion.  Defendants' previous discovery misconduct
> had already unnecessarily extended the litigation and the case was
> entering into its fourteenth month with outstanding discovery
> issues still unresolved.  Justice delayed is justice denied and for
> this reason Plaintiff opted to respond to Defendants' MSJ rather
> than continue battling with Defendants' Counsel's refusal to follow
> basic Rules of Civil Procedure and this Court's clear instructions.
> However, it is Plaintiff's position that Plaintiff suffered prejudice
> in this disjointed process because of undue delay and because
> Defendants' untimely MSJ filing prevented Plaintiff from taking
> pertinent depositions and securing the production of relevant

documents which could further substantiate Plaintiff's claims.

(Doc.37; PAGEID# 678). Prior to filing her summary judgment opposition, Plaintiff never alerted the Court that Defendants had somehow "prevented" Plaintiff from taking necessary discovery. (*Id.*). Rather, on August 24, 2016, the Court granted Plaintiff's unopposed motion for extension of time to respond to the motion for summary judgment, based on Plaintiff's representation that additional time was necessary to "confer" with opposing counsel to "develop[] a plan on how to proceed in light of Defendants' pending summary judgment motion." (Doc. 31, PAGEID# 610). One week later, the Court granted an additional extension for Plaintiff to file her opposition, after being advised that Plaintiff decided to "forego" additional discovery. (Doc. 33, PAGEID# 614). At no point – prior to filing her opposition – did Plaintiff request a telephone conference or otherwise apprise the Court that she was somehow "prevented" from taking necessary discovery due to Defendants' conduct.

In their reply to Plaintiff's opposition, Defendants counter that their "Motion for Summary Judgment was not filed contrary to any court instructions." (Doc. 40). Defendants further assert that they had "agreed to make available whomever Plaintiff's counsel wanted to depose," and that:

> Counsel for Plaintiff was told . . . that he could have as long as he wanted to respond and could wait and respond after the depositions were conducted. Plaintiff's counsel then indicated that he decided not to take any depositions. Even without Plaintiff taking the depositions, the undersigned counsel agreed to three extensions for Plaintiff's counsel to file his Memorandum Contra to the Defendant's Motion for Summary Judgment. Even on the third request, the undersigned counsel told Plaintiff's counsel that he could have more time than requested, if he desired. This dialogue should not even be a part of [this briefing], but Defendants' counsel felt compelled to respond.

(*Id.*)

In response to Plaintiff's substantive arguments regarding Plaintiff's alleged injuries, Defendants attached to their reply the expert report of Dr. Steven S. Wunder to support the proposition that "Plaintiff cannot establish that any injury occurred, let alone a sufficiently serious injury[.]" (Doc. 40, PAGEID# 741).

### C. **Posture of Plaintiff's Motion to Strike**

On December 21, 2016, over two months after Defendants filed their summary judgment reply, Plaintiff filed a Motion to Strike the expert report of Dr. Wunder. Plaintiff admits that the report was provided to him during discovery, but argues that – because Defendants did not rely on the report in their opening brief – they were barred from using it for the first time in their reply. (Doc. 42). She again raised the issue of Defendants' purported discovery abuses:

> [I]t is critical that this Court consider the myriad of documented discovery deficiencies and compliance issues Defendants engaged in long before this last evidentiary issue arose. After Defendants filed their MSJ in defiance of this Court's instruction to work with Plaintiff to resolve the ongoing discovery issues, . . . Plaintiff Wicker made her decision to forgo securing an expert based in large part on the fact that Defendants' July 29, 2016 MSJ did not cite to, or even mention, the expert report Defendants provided to Plaintiff on June 23, 2016.

(*Id*. at 757). Plaintiff argues that the Court should strike, or at a minimum disregard, the report.

### III. **ANALYSIS**

As an initial matter, the Court rejects Plaintiff's argument that the Motion for Summary Judgment was filed in defiance of an earlier Court order. While the Court did instruct the Parties to work toward resolving outstanding discovery issues and to report back to the Court, at no point did the Court order Defendants to refrain from filing their dispositive motion earlier than the deadline. Indeed, Rule 56 allows a party to move for summary judgment at any point, including before discovery is completed. However, parties frequently refrain from filing an early

motion for summary judgment, anticipating that the opponent will request additional time in order to complete discovery under Fed. R. Civ. P. 56(d). In this case, when Defendants filed their motion for summary judgment, Plaintiff did not file a Rule 56(d) motion; instead, she advised the Court that she had decided to forego additional discovery. (Doc. 33). Accordingly, Plaintiff's assertion that defendant "defied" a court order, causing her prejudice at the summary judgment phase, is not well-taken.[1] *Patterson v. Best Buy Co.*, No. 1:13-cv-49, 2015 U.S. Dist. LEXIS 6132, at *2-3 (S.D. Ohio Jan. 20, 2015) ("The Court finds that this is not a matter for summary judgment. Instead, Plaintiffs present a discovery dispute that they failed to raise before the discovery deadline.") (Black, J.)

In her Motion for Sanctions and Motion to Strike, Plaintiff makes arguments that implicate the record this Court may consider in deciding Defendants' motion for summary judgment. Therefore, the Court will first address the Motion for Sanctions and Motion to Strike. Thereafter, the Court will address the Motion for Summary Judgment.

### A. **Motion for Sanctions**

Plaintiff argues that Defendants engaged in sanctionable conduct under Rule 37(d) because: (1) counsel failed to provide a Rule 30(b)(6) witness for the deposition noticed for May 5, 2016; (2) Sherriff Lawless (i.e., the Lawrence County Sheriff's Office) failed to designate an adequately prepared Rule 30(b)(6) witness/witnesses at the rescheduled Rule 30(b)(6) deposition, and (3) Defendants provided an incomplete document production in response to the *duces tecum* portion of the Rule 30(b)(6) notice.

---

[1] Furthermore, it is difficult to see how Plaintiff could be disadvantaged by the opportunity to view Defendants' motion for summary judgment before the discovery deadline. Unlike most plaintiffs who first view a motion for summary judgment after the discovery deadline has passed, Plaintiff – who was granted multiple extensions to respond – still had time to marshal proof in order to oppose summary judgment.

1.  <u>Failure to Appear on May 5, 2016</u>

The Parties do not dispute that a Rule 30(b)(6) deposition was noticed for May 5, 2016, and that counsel failed to make such a witness available on the noticed date. Defendants do not cite any form of defect in the notice, and essentially concede that their failure to produce a Rule 30(b)(6) witness on May 5, 2016 was due to counsel's oversight in monitoring the email of an employee on leave. (Doc. 28, PAGEID# 156).

Rule 37(d) of the Federal Rules of Civil Procedure provides for sanctions if "a party ... fails, after being served with proper notice, to appear for that person's deposition[.]" The sanctions authorized by both Rule 37(d) and Rule 37(b)(2) are identical. Both provisions of Rule 37 mandate the award of attorney's fees in most cases, regardless of what other sanctions are imposed. Specifically, "the court *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3)(emphasis added).

Here, counsel for Defendants admits that the failure to appear was due to counsel's oversight, and that "someone in the office should have been covering Ms. Malone's emails more closely." (Doc. 28; PAGEID# 155). The Court agrees that counsel should have made such arrangements. Counsel's error necessarily means that the resulting failure to produce the noticed Rule 30(b)(6) witness falls short of being "substantially justified." At the same time, however, the parties appear to have proceeded with other depositions on May 5, 2016 and made arrangements to reschedule the Rule 30(b)(6) deposition for June 2016. There is no evidence that bad faith or willfulness motivated the failure to produce the Rule 30(b)(6) witness on May 5, 2016. Therefore, because the failure to produce the witness on May 5,

2016 was not substantially justified, the Court will order Defendants' counsel to pay reasonable expenses, including attorney's fees, caused by the failure; however, the Court finds that additional sanctions are unwarranted.

2. Rule 30(b)(6) Witness Preparation

Under Fed. R. Civ. P. 30(b)(6), a party – by deposition notice, or subpoena if appropriate – "may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination." "[T]he noticed party must designate persons knowledgeable in the areas of inquiry listed in the notice." 7-30 Moore's Federal Practice - Civil § 30.25 (2016). Thereafter, the organization or agency must designate an individual or individuals "to testify on its behalf . . . about information known or reasonably available to the organization." *Rivet v. State Farm Mut. Auto. Ins. Co.*, 316 Fed. Appx. 440, 447 (6th Cir. 2009) (quoting Fed. R. Civ. P. 30(b)(6)). It is "well-established" that an organization must thereafter "produce a witness knowledgeable about the subjects in the notice and to prepare that witness to testify not just to his own knowledge, but the [organization's] knowledge." *Conrail v. Grand Trunk W. R.R. Co.*, 853 F. Supp. 2d 666, 670 (E.D. Mich. 2012) (citing *Prosonic Corp. v. Stafford*, No. 2:07-cv-0803, 2008 U.S. Dist. LEXIS 80778, *3 (S.D. Ohio June 2, 2008)). Indeed, courts have interpreted Rule 30(b)(6) as imposing the following duties:

> (1) the deponent must be knowledgeable on the subject matter identified as the area of inquiry;
> (2) the designating party must designate more than one deponent if necessary in order to respond to the relevant areas of inquiry specified by the party requesting the deposition;
> (3) the designating party must prepare the witness to testify on matters not only known by the deponent, but those that should be known by the designating party; and
> (4) the designating party must substitute an appropriate deponent when it becomes apparent that the previous deponent is unable to

respond to certain relevant areas of inquiry.

7-30 Moore's Federal Practice - Civil § 30.25 (2016) (citing *Crawford v. George & Lynch, Inc.*, 19 F. Supp. 3d 546, 554 (D. Del. 2013); *SEC v. Goldstone*, 301 F.R.D. 593, 647 (D.N.M. 2014); *QBE Ins. Corp. v. Jorda Enters.,* 277 F.R.D. 676, 688 (S.D. Fla. 2012); *Sciarretta v. Lincoln Nat'l Life Ins. Co.*, 778 F.3d 1205, 1211 (11th Cir. 2015)).

While "[a]bsolute perfection is not required of a 30(b)(6) witness,"[2] producing an unprepared Rule 30(b)(6) witness is tantamount to a failure to appear, which may warrant sanctions under Fed. R. Civ. P. 37(d). *Lutz v. St. Paul Fire & Marine Ins. Co.*, No. No. 1:03-cv-750, 2005 U.S. Dist. LEXIS 12568, *7-8 (S.D. Ohio May 24, 2005) ("An improper Rule 30(b)(6) designation may amount to a failure to appear and warrant sanctions under Rule 37."). Rule 37(d) "provides for a variety of sanctions for a party's failure to comply with its Rule 30(b)(6) obligations, ranging from the imposition of costs to preclusion of testimony and even entry of default." *QBE*, 277 F.R.D. at 690. The party seeking sanctions must make at least an initial showing – with record citations – suggesting that the designee's preparation was inadequate. *Eid v. KLM*, 310 F.R.D. 226, 229 (S.D.N.Y. 2015) ("Plaintiffs have not met their burden of establishing that the Defendants' preparation of their Rule 30(b)(6) witnesses was deficient."). Before imposing sanctions, courts should compare the testimony elicited in the deposition to the topics noticed under Rule 30(b)(6) in order to determine the adequacy of the witness' preparation. *See*, *e.g.*, *QBE*, 277 F.R.D. at 685 (reviewing transcript).

Here, as the party seeking sanctions, Plaintiff has failed to make any showing that the preparation of the Rule 30(b)(6) designee was inadequate. Plaintiff did not provide the Court

---

[2] *QBE Ins. Corp. v. Jorda Enters.*, 277 F.R.D. 676, 691 (S.D. Fla. 2012) (citing *Costa v. City of Burlington*, 254 F.R.D. 187, 191 (D.N.J. 2008); *Chick-Fil-A*, 2009 U.S. Dist. LEXIS 109588, at *13)).

with the materials it needed to determine the adequacy of the witness's preparation. While it appears that the Rule 30(b)(6) notice was filed on April 14, 2016 (Doc. 18), Plaintiff did not provide a copy of the Lawless deposition before or contemporaneously with her July 1, 2016 Motion for Sanctions.[3] Furthermore, Plaintiff's Motion for Sanctions fails to supply the Court with citations to the Lawless deposition showing his purported lack of preparation. Instead, Plaintiff argues in conclusory fashion that Lawless "repeatedly testified" that other County employees had "more knowledge" of certain topics that he did. (Doc. 27-124). However, Plaintiff provides no examples with record citations, and the Court is not required to scour the record to find support for Plaintiff's Motion. *Browder v. Ankrom*, 473 Fed. Appx. 499, 500 (6th Cir. 2012) ("[W]e are not required to scour the record for potential arguments on his behalf."); *First Interstate Bank of Nevada N.A. v. National Republic of Chicago*, No. 80 C 6401, 1986 U.S. Dist. LEXIS 25103, at *9 (N.D. Ill. June 9, 1986) ("Mayfield's allegations of other misconduct are not identified by reference to the transcript. The court declines to scour the record for evidence of his assertions."). To the extent that Plaintiff seeks sanctions on the basis that Sherriff Lawless failed to designate an adequately prepared Rule 30(b)(6) witness/witnesses, the Motion for Sanctions is **DENIED**.

### 3. Adequacy of Document Production

Under Rule 37(a)(4), Plaintiff seeks sanctions for Defendants' alleged failure to produce documents that were requested before, and on the record during, the June 13, 2016 Rule 30(b)(6) deposition. After Plaintiff filed the Motion for Sanctions, the Court held a discovery conference with the Parties. July 7, 2016 Minute Entry. Later, on July 22, 2016, the Court was advised that the Parties were working "toward [] resolving outstanding discovery issues and [would] report to

---

[3] The Court would note that *Defendants* later filed the Lawless deposition in connection with the Motion for Sanctions (Doc. 30-4).

the Court when discovery is concluded."  July 22, 2016 Minute Entry.  Finally, on September 1, 2016, the Court was advised as follows:  "[T]he Parties have now conferred and have agreed that Plaintiff will forego additional discovery and will file a response to Defendants' July 29, 2016 summary judgment motion."  (Doc. 33, PAGEID# 614).  The Court is unwilling to sanction a party, under Rule 37(a)(4) or otherwise, after the party who originally sought sanctions makes the choice to "forego" additional discovery.   To the extent that Plaintiff seeks sanctions on the basis that Defendants failed to produce requested documents, the Motion for Sanctions is **DENIED**.

### B.  <u>Motion to Strike</u>

Plaintiff moves to "strike" an expert report Defendants submitted during summary judgment briefing, on the basis that the report was not attached to the opening brief and was used for the first time in reply.  (Doc. 42).  Defendants never filed an opposition to the Motion to Strike.

Plaintiff correctly observes that S.D. Ohio Civ. R. 7.2 (d) states, in pertinent part, that:

> When proof of facts not already of record is necessary to support or oppose a motion, all evidence then available shall be discussed in, and submitted no later than, the primary memorandum of the party relying upon such evidence. Evidence used to support a reply memorandum shall be limited to that needed to rebut the positions argued in memoranda in opposition.

As this Court has previously observed, the local rules are silent on whether non-compliant papers and evidence should necessarily be stricken.  *Nokes v. Miami Univ.*, No. 1:17 cv 482, 2017 U.S. Dist. LEXIS 136880, at *21-22 (S.D. Ohio Aug. 25, 2017).  However, "the Court's local rules expressly provide that '[f]ailure to comply with these Rules may result in the imposition of sanctions.'"  *Newman v. Univ. of Dayton*, 3:17-cv-179, 2017 U.S. Dist. LEXIS 148877, at *7 (S.D. Ohio Sept. 14, 2017) (citing S.D. Ohio Civ. R. 1.1(c)).  Furthermore, regardless of the

powers expressly vested in the Court under the Federal Rules of Civil Procedure or the Local Rules, the Court's inherent power to manage its docket includes the discretionary power to strike non-compliant documents. *Newman*, 2017 U.S. Dist. LEXIS 148877, at *7. However, in circumstances such as this – where a party attaches a previously unused expert report to a summary judgment reply – courts in this district have declined to "strike" the report; instead, the proper remedy "is simply to ignore it[.]" *Johnson v. Wolgemuth*, 257 F. Supp. 2d 1013, 1024 (S.D. Ohio 2003) (Rice, J.) (ignoring expert affidavit, attached to reply memorandum, in part because the affidavit "was not attached to the Defendants' primary brief, and [plaintiff] had no opportunity to respond"). *Accord*: *Maxum Indem. Co. v. Drive W. Ins. Servces*, No. 1:13-cv-191, 2014 U.S. Dist. LEXIS 196740, at *6 (S.D. Ohio June 13, 2014).

Here, it is beyond dispute that Dr. Wunder's expert report was not attached to the "primary" memorandum submitted in support of Defendants' motion for summary judgment. Defendants have not advanced any arguments that they were simply attaching reply evidence "needed to rebut the positions argued in memoranda in opposition" pursuant to S.D. Ohio Civ. R. 7.2 (d) – indeed, they advance no argument at all. Regardless, Defendants cite Dr. Wunder's report to support the factual proposition that Plaintiff "cannot establish that any injury occurred, let alone a sufficiently serious injury" in connection with the jail's alleged failure to provide adequate medical care. (Doc. 40; PAGEID# 743). The Court fails to see how Dr. Wunder's expert report was merely being used as "rebuttal" evidence. Accordingly, the Motion to Strike is **PARTIALLY GRANTED**, to the extent that it asks this Court to disregard Dr. Wunder's report at the summary judgment phase, and **PARTIALLY DENIED**, to the extent that is seeks wholesale striking of the expert report.

With the partial grant of the Motion for Sanctions, and the partial grant of the Motion to

Strike, the Court deems all discovery issues hereby resolved. In light of the fact that Plaintiff advised the Court on September 1, 2016 that she chose to "forego" additional discovery, the Court will not further address Plaintiff's discovery-related arguments made in opposition to summary judgment. *Patterson v. Best Buy Co.*, No. 1:13-cv-49, 2015 U.S. Dist. LEXIS 6132, at *2-3 (S.D. Ohio Jan. 20, 2015) ("The Court finds that this is not a matter for summary judgment. Instead, Plaintiffs present a discovery dispute that they failed to raise before the discovery deadline.") (Black, J.); *Passa v. City of Columbus*, No. 2:03-CV-81, 2006 U.S. Dist. LEXIS 22094, at *8 (S.D. Ohio Apr. 21, 2006) ("Indeed, although plaintiff sought three extensions of time to respond to Check$mart's motion, at no time did plaintiff request an extension in order to depose a better prepared corporate designee."). In other words, Plaintiff cannot make the choice to "forego" additional discovery, but at the same time ask for leniency at the summary judgment phase.

### C.  Motion for Summary Judgment

Defendants have moved for summary judgment on all of Plaintiff's claims. At the outset, the Court will dismiss claims against John Doe, as Plaintiff never amended her Complaint prior to the running of the statute of limitations to specifically name him. *Shepherd v. City of Columbus*, No. 04-CV-302 , 2006 U.S. Dist. LEXIS 14127, at *11-12 (S.D. Ohio Mar. 30, 2006) (citing *Nicholson v. City of Chattanooga*, 1:04-cv-168 , 2005 U.S. Dist. LEXIS 42041, at *31-32 (E.D. Tenn Oct. 17, 2005) (dismissing John Doe defendants where plaintiff failed to timely amend the complaint to name and serve John Doe defendants)).[4] Furthermore, Plaintiff's claims against Defendant Mosley and Defendant James in their official capacities should be treated as suits against the county, and will be dismissed because they are redundant to the claim pending

---

[4] Plaintiff's opposition (Doc. 37) makes no argument contra dismissal of John Doe.

against Sheriff Lawless in his official capacity, which is also a claim against the county. *Treinen v. Vill. of Greenhills*, No. 1:05-CV-448 , 2006 U.S. Dist. LEXIS 44340, *22 ("[D]istrict courts have dismissed official capacity claims against individuals as redundant or unnecessary where identical claims are asserted against the entity employing the individual.").[5]

The remainder of the claims will be addressed in turn.

## 1. Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" only if its resolution affects the outcome of the suit. *Id.*

On summary judgment, a court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

Once the moving party has met its burden of production, the nonmoving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson*, 477 U.S. at 249. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there

---

[5] *Accord*: *Campbell v. City of Springboro*, 788 F. Supp. 2d 637, 664 (S.D. Ohio 2011) ("Plaintiffs address the City of Springboro's alleged liability in connection with their claims against the City for failure to provide adequate training and supervision. To the extent that Plaintiffs intended to raise a separate and independent claim against the City by suing Officer Clark in his Official Capacity that claim is redundant and was not addressed by Plaintiffs in their response brief."); *Swink v. Montgomery Cty. Bd. of Comm'r*, No. 3:16-cv-392, 2017 U.S. Dist. LEXIS 132637, at *16 (S.D. Ohio Aug. 18, 2017).

must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252. Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## 2. Legal Analysis

Plaintiff asserts claims based on 42 U.S.C. § 1983, which states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress …

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970).

Plaintiff essentially pursues four separate theories of liability: (**a**) "Lawrence County Correctional Officers" knowingly denied Plaintiff access to her diabetes and heart medications for two days (*i.e.*, denial of medical care theory); (**b**) Defendant Mosley knowingly forced Plaintiff to ingest the wrong medication (*i.e.,* inadequate medical care theory); (**c**) Defendants Mosley and James "kick[ed] her in her left ribs, left thigh, and left shoulder" when Plaintiff lost consciousness (*i.e.*, excessive force theory); and (**d**) the Lawrence County Sherriff is liable for his alleged failure to train his personnel (*i.e.*, failure to train theory).

Each of the foregoing theories of liability is addressed in turn.

### a. **Denial of Medical Care**

The Sixth Circuit has analyzed claims for failure to provide adequate medical care under the Eighth Amendment's deliberate indifference standard. *Morabito v. Holmes*, 628 F. App'x 353, 356-58 (6th Cir. 2015) (applying the objective reasonableness standard to pretrial detainee's excessive force claims and deliberate indifference standard to claim for denial of medical care). A plaintiff must prove deliberate indifference on the part of a specific state actor. *Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 825, n.10 (6th Cir. 2007).

A finding of deliberate indifference to medical needs requires both objective and subjective inquiries. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991); *Williams v. Curtin*, 631 F.3d at 383; *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010). In the context of an Eighth Amendment claim based on a lack of medical care, the objective component requires that a prisoner have a serious medical need. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). "[A] medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention." *Blackmore*, 390 F.3d at 897 (internal quotation marks omitted). *Accord*: *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005). Courts have recognized that "[d]iabetes may qualify as a serious medical need." *Moody v. Bell*, No. No. 1:08-cv-796, 2009 U.S. Dist. LEXIS 83123, at *5 (S.D. Ohio July 8, 2009).

To establish the subjective component, a prisoner must demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." *Farmer*, 511

U.S. at 834. *Accord*: *Wilson*, 501 U.S. at 302-03. The plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009); *Woods v. Lecureux*, 110 F.3d 1215,1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 79 (6th Cir. 1995). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835.

Here, Plaintiff claims that – during the two days in which she was deprived of her heart and diabetes medications – unspecified "Lawrence County Correctional Officers" knew of Plaintiff's medical conditions but withheld medication. Amended Complaint, ¶15 ("Ms. Slone also informed <u>Lawrence County Jail Correctional Officers</u> of the critical importance of Plaintiff Wicker taking her medication as scheduled, in a timely manner, and as prescribed by her medical care providers."); ¶18 ("In response to Plaintiff's April 10, 2013 request for her evening medications, <u>Lawrence County Correctional Officers</u> stated to Plaintiff that there were no medications assigned to Plaintiff available at the jail."); ¶20 ("In response to Plaintiff's April 11, 2013 request for her morning medications, <u>Lawrence County Correctional Officers</u> stated to Plaintiff that her medications had not been 'set up.'"); ¶22 ("In response to Plaintiff's April 11, 2013 request for her evening medications, <u>Lawrence County Correctional Officers</u> again stated to Plaintiff that her medications had not been 'set up.'") (emphases added). Her opposition fails to point to record evidence connecting any named Defendant to the foregoing allegations.

Even if this Court were to assume that Plaintiff has met both the objective and subjective components of a Section 1983 claim based on inadequate medical care, Plaintiff has offered no evidence that any named defendant was among the "Lawrence County Correctional Officers"

with knowledge of her conditions and with knowledge of her multiple requests for medication. Based on Plaintiff's own allegations, and on the record before this Court, Defendant Mosley only became aware of her condition on April 12, 2013 and, thereafter, immediately sought to retrieve Plaintiff's medication. (Doc. 37-1; PAGEID# 706). Although Plaintiff argues that Defendant Mosley ultimately forced Plaintiff to take the wrong medication – the constitutionality of which will be addressed below – Plaintiff has not put forth evidence showing that any named defendant even had knowledge of her need for medication during the two-day period. Accordingly, the named Defendants are entitled to summary judgment on Plaintiff's claim, to the extent that Plaintiff claims a complete denial of medical care.

The Court must note that its decision is based on a failure of proof connected to the *named* Defendants. Had Plaintiff named and marshaled proof against the proper intake officers and medical personnel, her claims might have survived. The failure of her claims has nothing to do with Defendants' arguments that Plaintiff failed to prove that her medication was delivered, which is irrelevant because a facility with knowledge of an inmate's condition must take action – regardless of whether an inmate's family supplies necessary medications.[6] A contrary rule would allow inmates – who would inherently be at the mercy of individuals outside the institution to bring medications – to suffer or die with no consequences to personnel on notice of the inmate's medical condition, but who fail to act altogether.

---

[6] *Stefan v. Olson*, 497 Fed. Appx. 568, 576 (6th Cir. 2012) ("While this right to medical care does not impose an affirmative duty on the government to screen detainees for all possible ailments, this court has long held that prison officials *who have been alerted* to a prisoner's serious medical needs are under an obligation to offer medical care to such a prisoner." ) (emphasis in original) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. Mich. 2001)); *Danese v. Asman*, 875 F.2d 1239, 1244 (6th Cir. 1989) ("If a prisoner asks for and needs medical care, it must be supplied."). However, inmates are not necessarily entitled to the treatment or medication of their choice. *Thomas v. Coble*, 55 Fed. Appx. 748, 749 (6th Cir. 2003) (citing *Estelle v. Gamble*, 429 U.S. 97, 107-108, 97 S. Ct. 285, 293, 50 L. Ed. 2d 251, 262 (1976)).

### b.  <u>Inadequate Medical Care</u>

Although Plaintiff fails to link any named defendant to the deprivation of her prescribed medications, Plaintiff has specifically identified Defendant Mosley as the officer responsible for eventually "forcing" her to take the incorrect medications.  (Doc. 37-1; PAGEID# 705).

Claims premised on a "complete denial of medical care" are distinguishable from a prisoner's claims that he or she "received inadequate medical treatment."  *Westlake v. Lucas*, 537 F.2d 857, 860, 1976 U.S. App. LEXIS 8279, *10 (6th Cir. 1976).  *Accord*:  *Newell v. Sheriff*, No. 1:11-cv-86, 2014 U.S. Dist. LEXIS 124923, *31 (E.D. Tenn. Sept. 8, 2014) ("The Court will address Plaintiff's delayed . . . medical care claim separately from his claim that he was negligently administered another inmate's medication.").  Still, the Sixth Circuit applies the "deliberate indifference" standard when considering whether inadequate medical treatment is actionable under 42 U.S.C. § 1983.  *See*, *e.g.*, *Briggs v. Burke*, No. 15-2282, 2016 U.S. App. LEXIS 23600, *8 (6th Cir. July 29, 2016).  Again, the objective component is satisfied if "the medical need at issue is 'sufficiently serious,'" and the subjective component is met if the "official sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Tate v. Coffee County*, 48 Fed. Appx. 176, 179 (6th Cir. 2002).  To prevail, "an inmate must show more than negligence or the misdiagnosis of an ailment.'" *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010).

A defendant who negligently dispenses the wrong medication does not violate 42 U.S.C. § 1983, but a defendant who *knowingly* dispenses the wrong medication exposes himself to liability.  *Nard v. Colclough*, No. 4:05-CV-00429 GTE , 2007 U.S. Dist. LEXIS 1280, *7-8

(E.D. Ark. Jan. 3, 2007) (granting defendants' motion for summary judgment in part because "[t]here is no proof that the [d]efendant . . . *deliberately* caused [plaintiff] to receive the wrong medication") (emphasis added); *Tunson v. Lee*, No. 06-3762, 2006 U.S. Dist. LEXIS 95424, *8 (E.D. La. Aug. 22, 2006) (dismissing Section 1983 claim because, without proof that defendant acted with intent, "plaintiff's claim that he was given the wrong medication amounts to nothing more than a negligence claim").  That said, while the objective component clearly requires that a plaintiff show that her medical need is "sufficiently serious," what is less clear is whether the harm she actually suffers as a result of the inadequate medical care must also be "sufficiently serious."  The Sixth Circuit does not appear to have squarely addressed the level of harm required for a defendant to become liable for knowingly forcing an inmate to take the wrong medication.  However, many courts, including the Sixth Circuit, *suggest* that a claim is only actionable if the plaintiff suffers "serious" or "lasting" harm as a result of inadequate medical treatment (including ingestion of incorrect or harmful medication).  *Briggs v. Burke*, No. 15-2282, 2016 U.S. App. LEXIS 23600, *8 (6th Cir. July 29, 2016) ("Here, even accepting that Briggs alerted Burke of his 'allergy' and the *resulting reaction was serious*, he failed to establish that Burke acted with sufficient culpability.") (emphasis added).[7]  Arguably, such a requirement

---

[7] *Accord*: *Ray v. Reyes*, No. 16-2128-JDT-tmp, 2017 U.S. Dist. LEXIS 39309, at *7 (W.D. Tenn. Mar. 20, 2017) (rejecting Section 1983 claim; reasoning that, even though plaintiff alleged that "he was twice given the wrong medicine resulting in sweating, dizziness, a rash, swelling, and shortness of breath, [plaintiff did] not allege that these conditions were anything but minor or that they had any lasting effect"); *Brown v. Doe*, No. 9:12-CV-1346, 2013 U.S. Dist. LEXIS 186406, at *27 (N.D.N.Y. Nov. 25, 2013) (denying plaintiff's motion for summary judgment, reasoning in part that "[t]he watch log is devoid of notations indicating that Plaintiff complained of or displayed any serious medical problems as a result of ingesting pills, or that he requested medical treatment"); *Jasper v. Mullins*, No. 7:07cv00497, 2007 U.S. Dist. LEXIS 82959, at *7-8 (W.D. Va. Nov. 8, 2007) (dismissing claim where plaintiff was dispensed the wrong medication but never ingested it; reasoning that plaintiff could not "demonstrate a serious injury"); *Alexander v. Tippah County*, 351 F.3d 626, 631 (5th Cir. 2003) (affirming summary judgment in favor of defendants where "[t]he district court found that the only physical injury suffered by

25

is at odds with earlier Supreme Court precedent that rejected – albeit in the context of excessive force claims – "the notion that 'significant injury' is a threshold requirement" for an actionable civil rights violation. *Wilkins v. Gaddy*, 559 U.S. 34, 37, 130 S. Ct. 1175, 1178, 175 L. Ed. 2d 995, 999 (2010).

In *Wilkins*, the Supreme Court held that when prison officials maliciously and sadistically cause harm, "contemporary standards of decency always are violated . . . whether or not significant injury is evident." *Id*. "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.* Accordingly, "an inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id*. at 38.

Neither *Briggs* nor the cases addressed in footnote 7, *supra*, address *Wilkins*. While this Court recognizes that excessive force claims are analyzed under a different standard than claims premised on inadequate medical care, *intentionally* forcing an inmate to ingest the wrong medication (rather than negligently dispensing the wrong medication) raises many of the same concerns regarding inhumane physical punishment addressed in *Wilkins*. Such conduct is more akin to a battery than prison medical malpractice. Therefore, this Court is troubled by a standard that allows a defendant to intentionally – even maliciously – force a plaintiff to ingest the wrong medication, but escape liability because it "only" caused (for example) "unpleasant" vomiting with no "lasting" effect. *Alexander*, 351 F.3d at 631. Thus, where a plaintiff's Constitutional claim is premised on a defendant's allegedly malicious and sadistic act of forcing an inmate to

either [plaintiff] was nausea"; reasoning that, while "vomiting is an unpleasant experience, there is no indication that [plaintiff's] nausea was severe enough to warrant medical attention" and that plaintiff had "not alleged that his nausea was a symptom of some more serious malady, or had any lasting effects").

take the wrong medication, the legal sufficiency of the resulting harm should be analyzed under *Wilkins*.[8]

Here, the Parties dispute whether Defendant Mosley was even present when medications were passed on April 12, 2013, much less forcing inmates to take the wrong medication. Defendant Mosley cites to the April 12, 2013 work log showing that he started his shift at 8:00 p.m., and that medications were administered at 7:40 p.m.  However, Defendant Mosley admits that he frequently relies on coworkers to log times for him due to his poor handwriting. Therefore, this 20 minute discrepancy between pill call and the time Defendant Mosley's shift started (as logged by another co-worker) hardly supports the entry of summary judgment in his favor.  Ultimately, genuine issues of material fact exist regarding:  (1) whether Defendant Mosley was on duty and responsible for dispensing medication to Plaintiff on the night in question; (2) whether Plaintiff advised Defendant Mosley that he had given her the wrong pills; (3) whether Defendant Mosley screamed at Plaintiff to "take those fucking meds" (Doc. 30-3; PAGEID# 440) (Doc. 37-1; PAGEID# 706); and (4) whether Plaintiff experienced dizziness, nausea, and other symptoms after taking the pills.  Plaintiff need not necessarily present a medical diagnosis, so long as Plaintiff proves that Defendant Mosley acted with a sufficiently culpable state of mind, which a reasonable jury could infer if they believe that Defendant Mosley screamed at Plaintiff to take the pills after she advised him that they were not the correct pills. *Tillman*, 2004 U.S. Dist. LEXIS 25506, at *13.  Accordingly, Defendant Mosley is not entitled to summary judgment on Plaintiff's claim that she was provided inadequate medical care; however,

---

[8] Even if the Sixth Circuit were to expressly hold that a plaintiff who is forced to ingest the wrong medication must show "serious" injury, symptoms such as "fainting, vomiting, hallucinations, loss of breath and appetite, nausea, depression, anxiety, dizziness, and sudden symptoms of seizure" may be sufficient to make such a showing. *Tillman v. Sutherland*, 2004 U.S. Dist. LEXIS 25506, *12-13 (N.D. Ohio Dec. 13, 2004).  A physician's diagnosis is not necessarily required. *Id*.

Plaintiff fails to connect any other named Defendant to her being forced to take the wrong medications.

### c. **Excessive Force**

Plaintiff claims that both Defendant Mosley and Defendant James used excessive force against her.

A convicted prisoner's right to be free from the use of excessive force by prison officials is governed by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 327, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986).[9] An Eighth Amendment claim has both an objective and subjective component. *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (citing *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013)). The subjective component focuses on "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992)). *Accord: Wilkins v. Gaddy*, 559 U.S. 34, 37, 130 S. Ct. 1175, 175 L. Ed. 2d 995 (2010). In making this inquiry, the Court should consider the need for the use of force, the relationship between that need and the type and amount of the force used, the threat reasonably perceived by the official, the extent of the injury inflicted, and any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 319-21. The inmate is not required to suffer a serious injury, but the extent of his injuries may be considered in determining whether the force used was wanton and unnecessary. *Wilkins*, 559 U.S. at 38-40; *Hudson*, 503

[9] The Court is not persuaded by Defendants' argument that the Court should dismiss the excessive force claim because Plaintiff pleaded the claim under the Fourth and Fourteenth Amendments, rather than the Eighth Amendment. Plaintiff correctly observes that the count pleading excessive force incorporates by reference other paragraphs that correctly connect the excessive force claim to the Eighth Amendment. Amended Complaint (Doc. 22), ¶1 ("Defendants' conduct of deliberate indifference and excessive force violated Plaintiff's rights under the protections guaranteed by the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution as protected under 42 U.S.C. § 1983.").

U.S. at 7.  However, "[a]n inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Tuttle v. Carroll County Det. Ctr.*, 500 Fed. Appx. 480, 482 (6th Cir. 2012) (citing *Wilkins*, 559 U.S. at 38).

The objective component requires the "pain inflicted to be 'sufficiently serious'" to offend "contemporary standards of decency." *Cordell*, 759 F.3d at 580 (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011); *Hudson*, 503 U.S. at 8). "While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred." *Id.* at 580-81 (citing *Wilkins*, 559 U.S. at 37). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated ... [w]hether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.* at 581 (quoting *Hudson*, 503 U.S. at 9).

Here, construing the facts in the light most favorable to Plaintiff, Plaintiff's excessive force claims against Defendants Mosley and James fail as a matter of law.  Although she testified during her deposition that Defendant James kicked her (Doc. 30-3; PAGEID# 449), Plaintiff's later declaration submitted in support of her opposition appears to recant James' involvement in the kicking, describing only two instances of physical contact with Defendant James: (1) when Defendant James walked her to the infirmary, "she would occasionally shove me in the back," and because Plaintiff was feeling unwell each alleged shove caused her head to "bump" between the wall and the bars; and (2) after Plaintiff passed out, she awoke to Defendant James "kneading her chest" while other, unnamed officers kicked her.  (Doc. 37-1; PAGEID# 707).  However, an alleged "shove" that caused Plaintiff to "bump" her head – causing no discernable harm of

record – is insufficient harm under *Wilkins*. Furthermore, Plaintiff does not appear to argue that the other physical contact, *i.e.*, the alleged kneading, was done maliciously and sadistically. On these facts, Plaintiff cannot establish that Defendant James engaged in excessive force.

Likewise, Plaintiff describes no instances of physical contact with Defendant Mosley, so the excessive force claim also fails with him. (Doc. 30-3; PAGEID# 449). While Plaintiff describes being kicked, her declaration submitted in opposition to summary judgment fails to connect the kicking with any named Defendant: "two other jail employees [were] kicking me in the upper left shoulder and side]." (Doc. 37-1; PAGEID# 701). Accordingly, Defendants Mosley and James are entitled to judgment as a matter of law on the excessive force claim.

### d. Sheriff Lawless' Alleged Failure to Train/Supervise

Plaintiff alleges that Sheriff Lawless is liable in both his individual capacity.

### i. <u>Sheriff Lawless-Official Capacity</u>

Plaintiff's official capacity claim against Defendant Lawless, for his alleged failure to train and supervise, is the equivalent of a Section 1983 claim against Lawrence County.

A municipality or county may not be held liable under 42 U.S.C. § 1983 for the tortious conduct of its employees on a *respondeat superior* theory. *Polk Cty. v. Dodson*, 454 U.S. 312, 326, 102 S. Ct. 445, 70 L. Ed. 2d 509 (1981); *Monell v. Dept. of Soc. Srvs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). However, a government body may be liable for its employees' constitutional violations where the county or municipality itself, through a policy, practice, or custom, caused the constitutional injury. *Id.* at 694. "The municipality, through its deliberate conduct, must be the moving force behind the constitutional deprivation." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citing *Polk Cty. v. Dodson*, 454 U.S. 312, 102 S. Ct. 445, 70 L. Ed. 2d 509 (1981)). *Accord: City of St. Louis v. Praprotnik*, 485 U.S.

112, 121, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988); *Ford v. Cty. of Grand Traverse*, 535 F.3d 483, 495-97 (6th Cir. 2008) (to establish municipal liability for a claim of deliberate indifference to serious medical needs, plaintiff must demonstrate a direct causal link between a municipal policy, custom, or practice, and the constitutional violation).

"One way to prove an unlawful policy or custom is to show a policy of inadequate training or supervision." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) (citing *City of Canton v. Harris*, 489 U.S. 378, 387, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)). Plaintiff must demonstrate that (1) the training program at issue is inadequate to the tasks that officers must perform; (2) the inadequacy is the result of the County's deliberate indifference; and (3) the inadequacy is closely related to or actually caused plaintiff's injury. *City of Canton*, 489 U.S. at 389-91; *Plinton v. Cty. of Summit*, 540 F.3d 459, 464 (6th Cir. 2008). Deliberate indifference may be demonstrated in two ways: by showing "prior instances of unconstitutional conduct demonstrating that the County has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury" or by showing "a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Plinton*, 540 F.3d at 464. The Sixth Circuit has cautioned that "[m]ere allegations that an officer was improperly trained or that an injury could have been avoided with better training are insufficient to prove liability." *Miller v. Calhoun County,* 408 F.3d 803, 816 (6th Cir. 2005) (citing *Sova v. City of Mt. Pleasant,* 142 F.3d 898, 904 (6th Cir. 1998)).

Plaintiff has failed to develop a record of a "history of abuse" placing the County on notice of a deficient training policy. Therefore, the question becomes whether Plaintiff can point

to "a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." As discussed *supra*, Plaintiff has marshaled proof sufficient to support only one potential Constitutional violation, *i.e.*, Defendant Mosley allegedly forcing Plaintiff to take the wrong medication, despite being told that the medication was incorrect. For Plaintiff's *Monell* claim to survive, she must point to an unlawful policy that is "closely related to" or that "actually caused" the foregoing violation." *Plinton*, 540 F.3d at 464.

Here, Plaintiff only argues there are "genuine issues of material fact . . . as to whether it is the policy and custom of LCSO to forego adequate inmate admission training." (Doc. 37; PAGEID# 697). In other words, the only inadequate training she argues relates to whether the County properly trains employees on how to screen inmates for medical conditions and handle/administer incoming medications; however, the Court has already rejected all claims premised on her admission to the jail/medication intake because she has failed to marshal proof connecting any named Defendant to that process. Therefore, Plaintiff's failure to point to an LCSO policy that is "closely related to" or that "actually caused" Defendant Mosley separately – several days *after* intake – to allegedly force her to take the wrong medication is fatal to her *Monell* claim. *Sims v. City of Columbus, Ohio*, No. 2:12-cv-308, 2013 U.S. Dist. LEXIS 94712, at *18 ("where an underlying claim against an officer fails, the *Monell* claim against that officer's employer necessarily fails as well").

### ii.  Sheriff Lawless-Individual Capacity

"A § 1983 claim of personal liability for a failure to train and supervise differs from a § 1983 claim against a municipality for a failure to train and supervise." *Coley v. Lucas Cnty.*, 799 F.3d 530, 541-542 (6th Cir. 2015). In order to establish personal liability for a failure to train

and supervise:

> [t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.

*Id.* (citing *Taylor v. Michigan Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995) (emphasis in original) (quoting *Bradley v. Bellamy*, 729 F.2d 416, 421 (6th Cir. 1984)). In *Coley*, the Sixth Circuit agreed with a plaintiff who argued that Sheriff Telb's allegedly false statements to federal officials *post hac* were sufficient to show that Sheriff Telb "'at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate' when he helped [defendants] to cover up their unconstitutional actions." 799 F.3d at 542 (citing *Bellamy*, 729 F.2d at 421) (affirming judgment in favor of supervisory officials sued in individual capacity, reasoning that plaintiff made "no showing that any of the supervisory officials who were defendants in this case actively participated in or authorized any harassment *of appellant*") (emphasis added)).

Here, Defendants argue that Sheriff Lawless was not at the jail on the night in question, and that Plaintiff has adduced no evidence that he "implicitly authorized, approved or knowingly acquiesced" to the conduct of the offending subordinate. (Doc. 29; PAGEID# 289). In opposition, Plaintiff argues that Defendant Lawless' alleged failures in developing adequate training protocols means that he "implicitly authorized, approved, and knowingly acquiesced to the inadequate medical care Ms. Wicker received." (Doc. 37; PAGEID# 696). However, under *Coley* and *Bellemy,* Sheriff Lawless must have taken some action or inaction regarding his subordinate's conduct in connection with Ms. Wicker *specifically*. *Coley*, 799 F.3d 541-542 ("[t]here must be a showing that the supervisor encouraged the <u>specific incident</u> of misconduct or

in some other way directly participated in it) (emphasis added).  Plaintiff's claim against Defendant Lawless in his individual capacity thus fails.

### e.  <u>Qualified Immunity</u>

Plaintiff has adduced sufficient evidence thus far on only one claim, which is her claim against Defendant Mosley for allegedly forcing her to take the wrong medication.  Thus, the Court must decide whether Defendant Mosley is entitled to qualified immunity.  In analyzing whether a prison official is entitled to qualified immunity, the Court asks (1) "whether a constitutional right would have been violated on the facts alleged" and (2) "whether the right at issue was clearly established at the relevant time."  *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2020, 188 L. Ed. 2d 1056 (2014).

On the first element, the Court concludes that genuine issues of material fact exist from which a reasonable jury could determine that Defendant Mosley violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment.   On the second element, the Court finds Plaintiff's right to have been clearly established at the relevant time.   It is well-established that the Eighth Amendment protects against cruel and unusual punishment. Furthermore, the law in Sixth Circuit is clear that an officer dispensing the wrong medication is only shielded from liability if he acts negligently.  *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010).  Intentional acts are not protected.  *Id*.  *Accord*:  *Wilkins*, 559 U.S. at 38.  Defendants do not argue otherwise.  Therefore, Defendant Mosley is not entitled to qualified immunity.

### IV.     CONCLUSION

For the foregoing reasons, and consistent with the above:

A.  Plaintiff's Motion for Sanctions (Doc. 27) is **GRANTED IN PART** and

   **DENIED IN PART**.  Plaintiff is directed to submit a motion and affidavit

supporting her fees and expenses, directly related to Defendants' counsel's failure to produce a witness for deposition on May 5, 2016, within fourteen (14) days of this Order.  Reasonable fees and expenses, as determined by the Court, shall be borne by Defendants' counsel;

B.  Plaintiff's Motion to Strike (Doc. 42) is **GRANTED IN PART** and **DENIED IN PART**; and

C.  Defendants' Motion for Summary Judgment (Doc. 29) is **GRANTED IN PART** and **DENIED IN PART.**  Specifically,

    1.  Defendants' Motion for Summary Judgment is **DENIED** as to Defendant Mosley, to the extent that Plaintiff claims that Defendant Mosley provided inadequate medical care by forcing Plaintiff to take the wrong medication; and

    2.  Defendants' Motion for Summary Judgment is **GRANTED** in all other respects.

**IT IS SO ORDERED.**

           *s/ Michael R. Barrett*
           **Hon. Michael R. Barrett**
           **United States District Judge**